OWENS v. OWENS.

1. Land offered for sale in 1871 for the non-payment of taxes, and no bid received, became forfeited and the legal title vested in the State, there having been no irregularities in the tax proceedings up to that time.

2. But this land having been afterwards resold by the county auditor as forfeited land, without a compliance with the provisions of law regulating such sale, the purchaser's deed from the auditor was invalid.

3. Such resale, however, having resulted in a payment to the State of all taxes, penalties, and costs claimed by the State, the former owner or owners were possessed of an equitable title, which, if in more than one person, is subject to partition.

Before WITHERSPOON, J., Chester, May, 1885.

The Circuit decree fully states the case. It may be added, however, in view of subsequent changes in the law, that land forfeited to the State for want of bidders at a tax sale, under sections 124 and 125 of the act of 1868 (14 *Stat.*, 63) was directed to be resold by the act of March 12, 1872 (15 *Stat.*, 164); and it was under this act of 1872 that the county auditor of Chester attempted to sell this forfeited land on June 3, 1872. The Circuit decree was as follows:

William Owens died intestate in November, 1866, seized and possessed of two hundred acres of land in Chester County, leaving as his heirs at law his wife, Sarah Owens, and the above named plaintiff and defendants, his children and grandchildren. Sarah, the wife of William Owens, was *insane* at the death of her husband, and remained in this condition up to the period of her death in 1882. Jeremiah Mise administered upon the personal estate of William Owens, and has been discharged as such administrator by the Probate Court for Chester County. Sarah Owens at the time of her death had no personal property, her entire estate consisting of her one-third undivided interest in the real estate of her deceased husband. She also died intestate, leaving the plaintiff and defendants as her heirs. There has been no administration upon the estate of Sarah Owens. The defendant, Mary Ballard, is a minor, represented by her guardian *ad litem*, W. A. Sanders.

The plaintiff is a daughter and an heir at law of William and Sarah Owens, and seeks in the above entitled action : I. To have the real estate of William Owens partitioned. II. To have the defendant, Archy Owens, a son of William and Sarah Owens, to account for rents received from the land, as well as the proceeds of wood and cross-ties sold off of the land in excess of his proportionate share thereof. III. Out of the undivided one-third interest of her mother, Sarah Owens, in the land, plaintiff seeks payment of a reasonable compensation for the care and maintenance by plaintiff of her *insane* mother from 1867 to the death of. her mother in 1882.

All of the defendants, except Margaret Mise, answer the complaint, denying plaintiff's right to compensation for the care and maintenance of her mother. The defendant, Archy Owens, in his answer, also denies that plaintiff and the other heirs of William Owens have any right, title, or interest in and to the lands described in the complaint. The defendant, Archy Owens, claims title to said land in himself by virtue of a deed from James L. Ralph, dated December 30, 1872, as well as by adverse possession under color of title.

All of the issues were referred to a special referee, who filed his report October 9, 1884, and the cause came on to be heard before me upon the referee's report, and exceptions to said report on behalf of the defendant, Archy Owens. It appears that after due advertisement, the Owens land was offered for sale by the county treasurer of Chester County as delinquent land in June, 1871, and that there was no bid made for the land. On May 30, 1872, the land was again advertised, and on June 3, 1872, was sold by the county treasurer as "forfeited land," and bid off by the defendant, Archy Owens, for $100, who agreed that one James L. Ralph should advance the money and take and retain the county auditor's title to the land until he, Archy Owens, could refund the $100 advanced by Ralph. James M. Brawley, county auditor, on June 3, 1872, made a deed of the land to James L. Ralph, in consideration of $100. On December 30, 1872, James L. Ralph, in consideration of $100, conveyed the land to the defendant, Archy Owens. After diligent search, no record

can be found in the county auditor's or treasurer's or comptroller general's offices of the alleged delinquent or forfeited sale.

The defendant, Archy Owens, in support of his title, introduced before the referee his deed from James L. Ralph, December 30, 1872. Having proved that after diligent search the records required by law to be kept could not be found in the auditor's or treasurer's office, the defendant, Archy Owens, examined the county auditor and treasurer as to the proceedings had with reference to the Owens land having become delinquent and forfeited. At the instance of the plaintiff and the other defendants, and under a subpœna *duces tecum*, the defendant, Archy Owens, was required to produce before the referee the deed from James M. Brawley, county auditor, to James L. Ralph, dated June 3, 1872. The referee states in his report that there is no evidence that the county auditor ever designated on the *delinqent land list* the Owens land as "forfeited," or that the "forfeited land record" was ever certified officially by the county auditor, or that he ever made a copy thereof to be transmitted to the State auditor, as required by sections 124 and 125 of an act of the legislature, approved September 15, 1868. See 14 *Stat.*, 63.

The referee concludes, as matter of law, that the deed from J. M. Brawley, county auditor, to James L. Ralph, June 3, 1872, conveying the Owens land as "forfeited," is void, for the following among other reasons assigned in the report : I. Because the sale of the Owens land in June, 1872, as forfeited, was not advertised for two weeks, as provided under 3d section of the act of March 12, 1872. 15 *Stat.*, 164. II. Because the deed of the Owens land, as "forfeited," from Brawley, county auditor, to James L. Ralph, June 3, 1872, did not have the great seal of the State attached thereto. The referee also concludes, as matter of law, that the defendant, Archy Owens, is not entitled to hold the William Owens land by adverse possession. The referee, therefore, concludes that the plaintiff is entitled to have the William Owens land partitioned.

I concur with the referee in the conclusion that the deed from James M. Brawley, county auditor, to James L. Ralph, June 3, 1872, is void upon the grounds above set forth. As the defendant,

Archy Owens, claims through this deed, he has no valid title to the land in dispute. I also concur with the referee in the conclusion that the defendant, Archy Owens, cannot claim the land by adverse possession. But it must appear that the title to the Owens land is still in the plaintiff and the other heirs of William Owens in order to entitle the plaintiff to have the land partitioned. The referee finds that the Owens land became delinquent for taxes in 1871, was duly advertised and offered for sale as delinquent land, and there was no bidder for said land. There is no exception to these finding, and no effort has been made to show any irregularity in the proceeding prior to the delinquent sale in 1871.

The next inquiry, then, under the evidence, is whether or not the Owens land ever became forfeited, and the title thereto vested in the State according to law. If the title to the land has vested in the State, the plaintiff's action cannot be maintained. When does land become forfeited, and the title thereto vest in the State, and what is the *evidence* of such *forfeiture* of land, and vesting of title in the State? Section 124 of the act of 1868 provides that when land is offered for sale, as provided by law, and *not sold* for want of bidders, it "*shall thereby* become forfeited to the State of South Carolina, and *thenceforth* all the right, title, and interest of the former owner therein *shall be vested in the State of South Carolina.*" Section 125 of said act provides that the auditor shall enter in a substantial book, denominated the "forfeited land record," a list of all real estate forfeited to the State, certifying to the correctness thereof, and sign the same officially, a copy of which he shall certify and transmit to the State auditor, by the county treasurer, when he makes his annual settlement. As the Owens land has been sold at delinquent sale, and there were no bidders, it would seem, under section 124, that if the proceedings conformed to law, the land became forfeited to the State. Under section 125, above referred to, the "forfeited land record" is intended to furnish the *evidence* of *forfeiture*, and *the vesting of title* to the land *in the State.*

The referee finds that the auditor kept in his *office a "forfeited land record,"* but that it is lost or destroyed. If the "forfeited land record," when produced, would furnish the *evidence* of

the *forfeiture* of the land, it seems to me that, upon proof of its loss or destruction, as in this case, the legal presumption would be that the auditor did his duty in making the necessary entries therein, as provided under section 125 aforesaid. This presumption would not be removed until there is some evidence to show that the auditor did not keep this record according to law. There is no such evidence in this case, or any attempt to show that the "forfeited land record" was not properly kept by the auditor. The certified copy of the entries in the "forfeited land record," directed to be furnished the State auditor, I do not think is intended as *part of the evidence of forfeiture*, but merely to enable the State auditor and county treasurer to have a correct annual settlement.

I am constrained, by the evidence in this case, to conclude that the title to the Owens land has vested in the State by forfeiture for non-payment of taxes, and the plaintiff is not entitled to have said land partitioned. In this view of the case it will not be necessary to consider the other points raised by the exceptions to the referee's report.

It is therefore ordered and adjudged, that the *eighth exception* of the defendant, Archy Owens, to the referee's report herein, alleging error in said referee's failing to find that the William Owens land had become forfeited and the title thereto vested in the State be sustained, and that plaintiff's complaint herein be dismissed with costs.

The appeal raises the points stated in the opinion of this court.

*Mr. E. C. McLure*, for plaintiff.

*Mr. W. A. Sanders*, for defendants, appellants.

*Mr. Ashbel G. Brice*, for Archy Owens, respondent.

June 25, 1886. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The plaintiff, Mary Owens, sought by the action below to partition a certain tract of land situate in Chester County between herself and the other parties named above as heirs at law of her father, William Owens,

deceased, and also that defendant, Archy Owens, in possession, should account for rents and profits, &c. She sought further to subject the interest of her deceased mother, Sarah Owens, in said land to a claim which she desired to set up for attention and services to her said mother, since the death of her father, the said Sarah being all that time, and up to her death in 1882, insane and incapable of taking care of herself. All of the parties answered, except Margaret Mise, who did not answer. Mary Ballard, being a minor, answered by guardian *ad litem*. All but the defendant, Archy Owens, joined in the prayer for partition ; they .denied, however, the claim of the plaintiff, Mary, for the compensation demanded. The defendant, Archy, claimed the land as his own by virtue of a deed to him from one James Ralph and by adverse possession, and he denied that it was subject to partition between the heirs at law of the said William Owens, his father. He also resisted the claim of the plaintiff, Mary, for services rendered to her mother.

The case was finally heard by his honor, Judge Witherspoon, upon exceptions to referee's report. His honor, concurring with the referee, held, first, that in so far as the defendant, Archy, claimed under the deed from Ralph, his title was invalid, because Ralph claimed under a conveyance from the county auditor by purchase at a tax sale, which sale, not having been made according to law, was invalid. He also held that Archy could not claim the land by adverse possession under the evidence. Notwithstanding, however, that the defence of the defendant setting up title in himself could not avail, yet he denied the partition, because he found the title to the land in the State, the same having been forfeited to the State in 1871 as delinquent land, with no bidders. Reaching this conclusion, he declined to consider and adjudge the other points in the case, and he ordered and adjudged that the 8th exception of defendant to the referee's report, alleging error in said referee's failing to find that the William Owens land had become forfeited and the title thereto vested in the State, be sustained, and that plaintiff's complaint be dismissed with costs.

Mary Owens, Jane Craig, Chester Pertuis, Elizabeth Jacks, Mary Ballard, David Owens, and Isabella Bennett excepted and

appealed, raising in the main but two questions : First. That his honor erred in holding that title to the land in dispute had vested in the State by forfeiture ; and, second. The county treasurer having received one hundred dollars at the forfeited land sale, and thereby the State and county taxes and all costs being paid, the title in equity, if not the legal title, is in the heirs of William Owens as tenants in common.

We agree with the Circuit Judge, that the land became forfeited and the title thereto vested in the State in 1871, when it was exposed to sale with no bidders. The Circuit Judge and the referee agree, that up to this time there had been no irregularity in the tax proceeding. The referee found that the land became delinquent for taxes of 1871, was duly advertised and offered for sale as delinquent, with no bidders, and the judge says there were no exceptions to these findings. All the conditions were present at that time to cause forfeiture. The land was placed on the tax duplicate, the taxes had not been paid, it was exposed to sale, and there were no bidders, and under our act it was forfeited. There was no necessity for "inquest of office." The language of the act is definite and distinct. Section 124, act of 1868, 14 *Stat.*, 63. See, also, *Burr. Tax.*, § 110, on this subject ; *McMillan* v. *Robbins,* 5 *Ohio,* 28 ; *U. S.* v. *Repentigny,* 5 *Wall.,* 211.

We agree, too, with the Circuit Judge, that the irregularities connected with the subsequent sale, which resulted in a conveyance from the county auditor, Brawley, to Ralph, under which the defendant, Archy, claims, were so great as to render that deed invalid, and therefore that it did not divest the title from the State ; and we think the Circuit Judge was right in declining to decree partition upon the legal title of plaintiff.

But under the circumstances of this case we are of opinion that there were equitable grounds for the partition worthy of consideration, or, at least, there was enough in the case in that direction to entitle the plaintiff, and the other parties asking partition, to have those grounds considered and adjudged. There seems to be no doubt that the State has been paid for the land, all taxes, costs, and penalties appear to have been settled in a sale which the tax officials made of the land after it had been forfeited, and

the State now has no further claim upon it, so that the equitable title, at least, is in some one other than the State.   Whether that equitable title is in the heirs at law, as a whole, or in some one of them alone, is a question to be determined by investigation, and is involved in the claim of the plaintiff for partition. So, too, the matter of rents and profits, in the event that it should be determined that there exists an equitable right to partition, would be involved.   Also the claim of Mary, to subject her mother's interest in the land, in the event that partition is decreed, is a matter which should be considered.

Now, to the end that these matters may be considered and adjudged, it is the judgment of this court, that so much of the judgment of the Circuit Court as dismisses the complaint, be reversed, and that the case be remanded to that court so that the other questions suggested above, raised by the exceptions to the referee's report, and not considered in the decree herein appealed from, may be heard and determined upon the referee's report, including the testimony taken by him and the exceptions thereto.